# EXHIBIT D

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

*Filed and Attested by the
Office of Judicial Records
26 FEB 2024 05:59 pm
C. PERRY*

| | |
|---|---|
| ESTATE OF JOHN BUTLER, DECEASED BY SHERRI POMROY, EXECUTOR | : TRIAL DIVISION - CIVIL |
| Plaintiff, | : CIVIL ACTION |
| v. | : OCTOBER TERM, 2023 |
| PHILADELPHIA POLICE OFFICER ADAM TRUSH #9344 AND PHILADELPHIA POLICE DETECTIVE MICHAEL FAHY #847 | : JURY DEMAND |
| Defendants. | : No. 3264 |

## NOTICE TO DEFEND

| **NOTICE** | **AVISO** |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. | LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. |
| **PHILADELPHIA BAR ASSOCIATION** Lawyer Referral and Information Service 1101 Market Street, 11th Floor Philadelphia, Pennsylvania 19107 (215) 238-1701 | **ASOCIACIÓN DE LICENCIADOS DE FILADELFIA** Servicio De Referencia E Información Legal 1101 Market Street, 11th Floor Filadelfia, Pennsylvania 19107 (215) 238-1701 |

Case ID: 231003264

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ESTATE OF JOHN BUTLER, DECEASED BY SHERRI POMROY, EXECUTOR | : TRIAL DIVISION - CIVIL :  : : |
| Plaintiff, | : CIVIL ACTION |
| v. | : : OCTOBER TERM, 2023 |
| PHILADELPHIA POLICE OFFICER ADAM TRUSH #9344 AND PHILADELPHIA POLICE DETECTIVE MICHAEL FAHY #847 | : JURY DEMAND : : : |
| | : No. 3264 |
| Defendants. | : : |

## COMPLAINT

### PARTIES

1. John Butler, who was at all times relevant to this Complaint a resident of Philadelphia, Pennsylvania, died on October 29, 2021. At the time of his death, he was 44 years old.

2. Plaintiff Sherri Pomroy is the wife of John Butler and has been appointed as the Administrator of the Estate of John Butler by the Office of the Register of Wills of Philadelphia County. Plaintiff brings this action in her capacity as Administrator of the Estate.

3. At all times relevant to this Complaint, defendant Police Officer Adam Trush was employed by the Philadelphia Police Department assigned to the 25th District of the Philadelphia Police Department.

4. At all times relevant to this Complaint, defendant Police Detective Michael Fahy was employed by the Philadelphia Police Department assigned to East Detectives of the Philadelphia Police Department.

5. At all times relevant to this Complaint, defendants acted under color of state law.

## FACTUAL ALLEGATIONS

6. At approximately 6:00 p.m. on October 27, 2021, 25th District Philadelphia Police Officers Sylvester White and Markenson Smith responded to an accident at 500 Butler Street in Philadelphia involving John Butler, driving one vehicle, and another driver, Mr. Mott, who was arrested by Officer White for terroristic threats.

7. Officer Smith arrested Mr. Butler on an Arrest Other Jurisdiction ("AOJ") warrant, which is an arrest warrant for an individual who is arrested for a warrant from outside of Philadelphia.

8. Mr. Butler had a warrant from the Schuylkill Haven Pennsylvania State Police for not appearing for court on a drug possession case.

9. Both Mr. Butler's wife, Sherri Pomroy, and his brother in-law told the officers when Mr. Butler was arrested that he is drug addicted.

10. Officer Smith transported Mr. Butler to the Divisional Booking Center ("DBC") located at 3901 Whitaker Avenue, Philadelphia, PA to process him pursuant to the AOJ warrant. Officer Smith states that he searched Mr. Butler before transporting him to the DBC at approximately 7:00 p.m.

11. Sergeant Richard Lineman interacted with Mr. Butler in the back of Officer Smith's vehicle and suspected that he may be under the influence of narcotics or alcohol on account of his dilated pupils so performed a field sobriety test on him.

12. Mr. Butler was then placed in Cell Number 16, where he was alone for the following forty-eight hours until he was pronounced dead at 6:08 p.m. on October 29, 2021.

13. The cell Mr. Butler has a solid steel door without bars, which upon information and belief, was closed during the time Mr. Butler inhabited it. Accordingly, Mr. Butler would have had

Case ID: 231003264

no way to seek help absent an officer checking on him.

14.     The procedure for processing AOJ Warrants is to take the arrestee's fingerprints, send it to the Records and Identification Unit then wait for a response from that unit via phone call or fax. Once received, the response is taken upstairs to Divisional Detectives in the DBC who then contact the other jurisdiction to confirm the correct person was arrested on the AOJ warrant. If the correct person was arrested the detective then enters the individual's information into the Preliminary Arraignment System ("PARS") and then DBC personnel take the individual's photograph and an additional set of prints for further processing until transportation of the individual to the prison facility can be accomplished.

15.     This is a lengthy process that, upon information and belief, regularly takes multiple days to perform as it did in this matter.

16.     Mr. Butler's photograph and second set of fingerprints were never taken as he died of a drug overdose prior to the prints being taken for the second time.

17.     Philadelphia Police Detective Michael Fahy received confirmation from the PSP for Mr. Butler during his shift from 8:00 a.m. to 4:00 p.m. on October 29, 2021 and prepared a PARS report per procedure at 11:45 a.m.

18.     Detective Fahy went to Mr. Butler's cell at approximately the same time he prepared the PARS report to ask if would sign a transfer of custody waiver. Mr. Butler responded that "he would do whatever would make him get out of there [the DBC] faster."

19.     Upon information and belief, this is the last time anyone saw Mr. Butler alive.

20.     Mr. Butler was in need of medical attention when Detective Fahy went to his cell that morning. His body had been shutting down from the drugs already in his system at the time of his arrest thirty-six hours earlier.

Case ID: 231003264

21. Further, per the investigation into Mr. Butler's death, there is camera footage of Mr. Butler in cell 16 prior to his death which, upon information and belief, would show that his medical need was apparent from his physical appearance.[1]

22. Detective Fahy stated when he was interviewed regarding Mr. Butler's death that Mr. Butler told him that the vomit, along with the "smashed-up sandwiches" was not from him. Given that Mr. Butler had been the only person in the cell for two days, and a different officer remembers bringing Mr. Butler a sandwich on that same shift, upon information and belief, that statement is false and was said by Detective Fahy as a post-hoc justification for his inaction which led directly to Mr. Butler's preventable death.

23. In addition to the vomit in Mr. Butler's cell there were also many bottles of water, as "he kept asking for water."

24. Further, given that within a few hours, despite taking no harmful action such as ingesting drugs or committing suicide, Mr. Butler was dead, it is reasonable to infer that Mr. Butler's appearance demonstrated that he was in need of medical attention when Detective Fahy went to his cell in the late morning of October 29, 2021.

25. Philadelphia Police Officer Adam Trush discovered shortly after arriving for his shift from 2:00 p.m. to 10:00 p.m. that he was the only officer in the DBC due to callouts. Accordingly, his duties were to process and check on the individuals in the DBC. The term for Officer Trush's role during this shift is "turnkey".

26. As the "turnkey" Officer Trush was responsible for regular checks on inmates and to document those checks in the "Log-book". "Cell Block Attendants and/or trainees will inspect

---

[1] Plaintiff attempted to procure this footage prior to filing the instant Complaint through the process of pre-complaint discovery as permitted under Pennsylvania Rule of Civil Procedure 4003.8, but counsel for Defendants has failed to produce any video.

Case ID: 231003264

the cellblocks at, a minimum of, fifteen (15) minute intervals or as scheduled by the ORS, but no later than every thirty (30) minutes. Note: Should any personnel, during Cell Block/Detention Room Inspections, perceive that a detainee's behavior or statements indicate they may be a danger to themselves or others, will take immediate action to ensure the health and safety of the detainee. Personnel will notify a supervisor of the situation and document it on the medical checklist." 7.8(10)(A)(3).

27. Per the Internal Affairs Investigation in this matter, there is no documentation of any checks on Mr. Butler from the start of the 2:00 p.m. shift until he was found dead four hours later.

28. Officer Trush stated when questioned regarding Mr. Butler's death that he checked on Mr. Butler at 4:30 p.m. and that Mr. Butler was "alert and in good health".

29. Upon information and belief this is false. In addition to the lack of any documentation corroborating any checks, when Mr. Butler was discovered ninety-minutes later without a pulse he was, according to Police Officer Isaiah Banks, cold and stiff. Accordingly, it is illogical that ninety-minutes earlier he was "alert and in good health".

30. Even more illogically, the electronic Detainee's Medical Checklist which was created at 5:30 p.m. on October 29, 2021, shows that as of that time, Mr. Butler had no obvious pain or injury, no obvious serious medical problems, did not appear to be under the influence of alcohol or drugs, and had no visible signs of alcohol and/or drug withdrawal.

31. Officer Banks was not scheduled to work in the DBC, but was called in on an overtime detail to assist fingerprinting and processing prisoners at the DBC. When he went to Mr. Butler's cell, Mr. Butler was unresponsive. Per Officer Banks, Mr. Butler was "cold to the touch, felt stiff, and his eyes were open". Officer Banks checked his pulse with negative results and then

went to get a supervisor and call a medic.

32. Sergeant Stanley Sanford stated in a written statement that after being informed by Officer Banks that Mr. Butler was unresponsive he observed Mr. Butler "laying on his stomach with his head down next to his sneakers.

33. After life-saving measures were attempted, Mr. Butler was pronounced dead at 6:08 p.m.

34. The Medical Examiner's report cites the cause of death for Mr. Butler as "Drug Intoxication (Methamphetamine)" and manner of death as "Accident".

35. Philadelphia Police Lieutenant Francis Erickson of Internal Affairs investigated Mr. Butler's death. Lieutenant Erickson states in his report, "On 7-12-22 the assigned spoke with Dr. Sorokin, at the Medical Examiner's Officers [sic], regarding how Mr. Butler could die from methamphetamine use 48 hours after being arrested. The investigator was informed that methamphetamine overdoses after a prolonged period could be due to the subject not being aware that their body was in distress because of the effects of the drug."

36. Accordingly, and given that there was no paraphernalia in Mr. Butler's cell and he was searched before his admission to the DBC, it is reasonable to infer that Mr. Butler died of a methamphetamine overdose he was suffering from the time of his arrest until his death two days later.

37. Defendants Trash and Fahy made an intentional decision with regard to Mr. Butler's medical care which placed Mr. Butler at substantial risk of suffering serious harm. These defendants did not take reasonable available measures to abate that risk, even though a reasonable police officer in the circumstances would have appreciated the high degree of risk involved, thereby making the consequences of the defendants' conduct obvious.

Case ID: 231003264

38. At all times relevant to this Complaint, the conduct of all defendants was in willful, reckless, and callous disregard of Mr. Butler's protected rights.

39. As a direct and proximate result of the conduct of all defendants, Mr. Butler experienced enormous physical and emotional pain and suffering.

40. As a direct and proximate result of the conduct of all defendants, Mr. Butler was caused to lose his life and thereby caused to suffer complete loss of earnings and earning capacity.

## WRONGFUL DEATH AND SURVIVAL ACTIONS

41. Plaintiff, as Administratrix of the Estate of John Butler, brings this action on behalf of Mr. Butler's heirs under the Pennsylvania Wrongful Death Act, 42 Pa. C.S. § 8301.

42. Mr. Butler's heirs have, by reason of Mr. Butler's death, suffered pecuniary loss, and have incurred expenses related to his death.

43. Mr. Butler's heirs have, by reason of Mr. Butler's death, suffered further pecuniary loss including expected contributions and financial support from Mr. Butler for food, clothing, shelter, medical care, education, entertainment, recreation, and gifts.

44. Mr. Butler's heirs have, by reason of Mr. Butler's death, suffered loss of services, society and comfort that decedent would have provided or contributed had he lived.

45. Plaintiff also brings this action on behalf of the Estate of John Butler under the Pennsylvania Survival Statute, 42 Pa. C.S. § 8302, under which all claims Mr. Butler would have been able to bring had he survived may be brought by Mr. Butler's estate.

46. Mr. Butler's estate, has, by reason of Mr. Butler's death, suffered pecuniary loss, and has incurred expenses related to his death.

47. As a direct and proximate result of the conduct of all defendants, Mr. Butler experienced extraordinary physical and emotional pain and suffering before his death, and, as a

Case ID: 231003264

result of his death, suffered complete loss of earnings and earnings capacity and loss of the enjoyment of life.

48. Plaintiff via this survival action, seeks damages for these harms caused to Mr. Butler.

## CLAIMS FOR RELIEF

### COUNT I
### Plaintiff v. Defendants Trush and Fahy
### Reckless Disregard of Safety

49. The allegations set forth in preceding paragraphs, inclusive, are incorporated herein as though fully set forth.

50. Defendants Trush and Fahy had knowledge of the dangerous condition to which plaintiff was being subjected when he was slowly dying of a drug overdose in their custody and control, the authority to intervene to aid and protect her, and the ability to rectify the danger faced by plaintiff.

51. Defendants Trush and Fahy intentionally failed to perform their duty to plaintiff, knowing or having reason to know that their acts and omissions created an unreasonable and substantial risk of harm to plaintiff.

52. The conduct of defendants Trush and Fahy constituted the tort of reckless disregard of safety, § 500, 2 Restatement of Torts, 2d.

53. As a direct and proximate result of the conduct of defendants Trush and Fahy, plaintiff sustained injuries and damages as aforesaid.

54. The actions of defendants Trush and Fahy were wanton, willful, malicious, oppressive, outrageous and unjustifiable and, therefore, punitive damages are necessary and appropriate.

Case ID: 231003264

**WHEREFORE**, plaintiff demands judgment for compensatory and punitive damages against defendants Trush and Fahy in an amount in excess of Fifty Thousand Dollars ($50,000.00), along with costs, attorney's fees, interest, and such other and further relief as the Court may deem just and proper.

## COUNT II
### Plaintiff v. Defendants Trush & Fahy
### Negligent Undertaking to Render Services to Protect Others, Negligent Infliction of Emotional Distress & Gross Negligence

55. The allegations set forth in preceding paragraphs, inclusive, are incorporated herein as though fully set forth.

56. At all times pertinent hereto, defendants Trush and Fahy were negligent, grossly negligent, careless, reckless, and negligent per se, in the following manner:

    a. Defendants Trush and Fahy knew or should have known that their actions and inaction could result in injuries to plaintiff;

    b. Defendants Trush and Fahy failed to take reasonable care for the safety of plaintiff;

    c. Defendants Trush and Fahy knew a danger to Mr. Butler existed, or should have known that harm to Mr. Butler was reasonably certain to occur;

    d. Defendants Trush and Fahy intentionally acted or failed to act in conscious disregard of the likelihood of harm to Mr. Butler;

    e. Defendants Trush and Fahy undertook to provide services to protect Mr. Butler and failed to action in a reasonably careful manner in providing services to protect him;

    f. The conduct of Defendants Trush and Fahy increased the risk of harm suffered by Mr. Butler;

    g. Defendants Trush and Fahy by their actions and failure to act destroyed the possibility of avoiding injury to Mr. Butler; and

Case ID: 231003264

    h.    Defendant Trush violated directives, rules and regulations, relating to checking and caring for prisoners under his care and control as the "Turnkey".

57.    The aforesaid conduct of defendants Trush and Fahy was a direct and proximate cause of plaintiffs' injuries, including emotional distress.

58.    The acts of the defendants Trush and Fahy alleged in the preceding paragraphs constitute the torts of negligent undertaking to render services to protect others, negligent infliction of emotional distress and gross negligence, all to plaintiff's great detriment and loss.

59.    As a result of the conduct of the Defendants Trush and Fahy, plaintiff sustained injuries and damages as aforesaid.

**WHEREFORE**, plaintiff demands judgment for compensatory and punitive damages against defendants Trush and Fahy in an amount in excess of Fifty Thousand Dollars ($50,000.00), along with costs, attorney's fees, interest, and such other and further relief as the Court may deem just and proper.

_____
Alan L. Yatvin, Esquire
I.D. No. 38716
Noah S. Cohen, Esquire
I.D. No. 313849
Weir Greenblatt Pierce LLP
1339 Chestnut Street, Suite 500
Philadelphia, Pennsylvania 19107
T: 215-241-7766

*Counsel for Plaintiff*

Case ID: 231003264

## **VERIFICATION**

The facts set forth in the foregoing complaint are true and correct to the best of the undersigned's knowledge, information, and belief, and are verified subject to the penalties for unsworn falsification to authorities under Pennsylvania Crimes Code §4904 (18 Pa. C.S. § 4904).

Date: February 26, 2024

_____
**Noah Cohen, Esquire**

Case ID: 231003264

## CERTIFICATE OF SERVICE

      I, Noah S. Cohen, Esquire, hereby certify that on the below date, I caused a true and correct copy of the foregoing Complaint to be served upon all counsel of record via the Court's efiling system.

**WEIR GREENBLATT PIERCE LLP**

Date: February 26, 2024

Noah S. Cohen, Esquire
I.D. No. 313849
Weir Greenblatt Pierce LLP
1339 Chestnut Street, Suite 500
Philadelphia, Pennsylvania 19107
T: 215-241-7766

*Counsel for Plaintiff*